17-1402 Lynette Duncan v. Liberty Mutual Insurance Company Oral argument not to exceed 15 minutes per side Mr. June for the appellant Good morning Maid Police Court. I'm Robert June on behalf of Lynette Duncan and I'd like to reserve four minutes for rebuttal please. So the central purpose of the double damages provision of the Medicare Secondary Payer Act is to protect Medicare from making unnecessary expenses to protect the integrity of the Medicare trust fund. Medicare does this, the Secondary Payer Act does this in two ways. It requires primary payers to pay on a primary basis and if they don't, triggering Medicare's conditional payments, then they're subject to double damages. I really don't think that that's controversial. The argument presented by Liberty Mutual seems to me to turn the construction of the Medicare Secondary Payer Act on its head. They seem to be saying that they're entitled to tell Medicare that a primary payer could simply say to Medicare, we're going to sit back and hold back our payments right now. You make your conditional payments, but when you're done, we will reimburse you. And if they say that, then there's no double damages claim. I think the most difficult thing for me to figure out here is it's certainly not unusual to have a dispute between a primary insurance company and an insured over whether or not the incident is covered, right? So if an insurance company takes the position that something isn't covered, in this case, as I understand it, they're saying the heart attack occurred before the accident. You're saying the heart attack occurred as a result of the accident. One would result in coverage, one would not, right? And the insurance company has a right to dispute the extent of coverage, right? Now you sued in state court and they issued a declaration that said that their claiming that this was excluded was wrong, that they did owe. That's right. But if you're right in the way this works, then any time the insurance company exercises that right and turns out to have been wrong, then they're liable not only for what they should have paid, but they're liable for double something, we don't know double what, in connection with this other federal statute, right? Yes, actually, I believe that's correct. So it's really a strict liability statute if you're wrong on claiming an exclusion. Yes, I think that's correct. And you think that's what Congress intended? Yes, I do. I think that they're doing that... Are there any other cases where this has happened? Where primary insurers are required... It just seems like that there would be one of these Medicare Secondary Repair Act claims in every single insurance dispute, if your interpretation is correct. And I'm just wondering, I don't a fair number of times, so I'm not sure, maybe I misunderstand the question. But I think that the statute, whether you look at it, how you look at it, you know, when Medicare was first doing all of this, they were treated as a primary payer, and all these insurance companies were relieved of payment entirely. The Secondary Payer Act was enacted specifically to deal with that problem. So what should the insurance company have done if it wanted to avoid the double liability? It should have paid on a primary basis. When? When the bills were submitted. Regardless of whether ultimately it was held to be liable. Well, that's a risk it takes when it does that, I believe. I think that... You have a risk. There's two risks. You know, we really don't, in the facts of this case, we don't have to get there. I think that's true. But they're still disputing this. I mean, three weeks ago, they went to state court and told the judge that they were going to be appealing that verdict, and appealing all the determination of causation, and appealing all that. So as of right now, they dispute it. Following up on Judge Morse's question, we have a lot of claims where there is a reservation of rights. But generally it comes up, as I understand it, you agree to defend, but you reserve your rights on whether you indemnify. There isn't that mechanism for an insurance company to utilize in a case like this where the provider is requesting payment. You either pay them or you don't. And if you're held not to be liable down the road as the primary payer, the provider isn't going to pay them back. They provided the services, right? Correct. And the beneficiary is not going to be collectible. So the insurance company is just out, even though they didn't actually cover the incident. Correct. But the reverse is a similar dilemma in a way, because what we've got here is providers being forced to eat Medicare discounts in a non-Medicare case. And why should they be required to do that? Let's talk about what another alternative is. If a provider is the one that's making this claim, I understand where the provider has standing to do that. But I think it gets trickier in connection with the beneficiary. I see how you had standing to file a breach of contract claim in state court. I get that. You get a judgment and then afterwards you add the Secondary Payers Act claim. I get your argument that that relates back to when you first filed the complaint. But you have to have standing for all of the different claims that you're making in the case. So where does your client get standing? What damages did your client incur in this instance because Medicare paid? The standing... Well, first of all, we're in the case because Liberty Mutual didn't pay. The standing we get... No, but Medicare paid in their place. Well, Medicare paid in their place. They're claiming, yes, they're claiming in the state court that Medicare's payments relieve them of $671,000 of primary payments. That's their argument in state court, yes. Just tell me what damages your client suffered here. Pardon? Just tell me what damages your client suffered here, not because of the breach of contract, but rather because of the fact that Medicare paid in place of the primary insurer. How did that damage your client? By regulation, we're required to go forward and pursue the claim for Medicare. This isn't some choice. Ms. Duncan is required by regulation to do whatever's necessary to get that payment made. But to lead you to answer Judge McKeague's question about what damage you suffered by virtue of Medicare paying, is there not evidence in the record that Liberty Mutual's case manager, Susan Klein, and the senior claims specialist, Barbara Grignoli, both have statements that said that all the care that should be done should be what Medicare would cover, and that there should not be any additional treatment that was beyond what Medicare would cover, and that Medicare covers lesser amounts than what private insurers might cover, or Medicare covers lesser treatment, not just the amounts, but Medicare authorizes certain treatments and not other treatments. This gentleman was in a long-term coma-type state and getting extensive treatment. So query what kind of treatment would have been available absent Medicare limitations as to treatment. I believe that both the number of sessions and the amount of treatment. Medicare, I don't know the exact answer to that. Do you know any answer? I mean, are you surmising? Am I surmising? In fact, what facts have you come forward with here to say that because Medicare paid instead of the primary insurers, the standard of care was less, the number of treatments were less, the hospital still coming after your client for the balance? I think there are any number of things that could happen that would give the beneficiary, in a case like yours, standing, but you didn't seem to plead any. So I'm just trying to figure out what harm did your clients suffer because Medicare paid instead of the insurance company? My client has had to go through this protracted litigation simply because Liberty Mutual, or primarily because Liberty Mutual is using Medicare as a shield to primary payment. Well, let me ask that because that's another thing I don't understand. We're involved in this whole thing. That's point of the state court lawsuit, aside from setting up then this Medicare Secondary Repairs Act claim later? What was the point of it when Medicare did pay for the care? And so far as we can tell, at least from the record, the care wasn't deficient and the hospital isn't coming back at your client to recover the difference between the Medicare rate and their charged rate. So the point is that the state court lawsuit is actually seeking payment of allowable expenses under a Michigan statute. Those allowable expenses include the money that was paid by Medicare and needs to be reimbursed. Ms. Duncan is required by When you say she's required, what's the point? If she settles her case, say that she settles her case down below and it doesn't include the money that Medicare paid, Medicare can still come after that settlement and that's the settlement that's going to be used to determine what Medicare gets reimbursed. Well, so they're getting their money anyway. From Ms. Duncan, not from Liberty Mutual. And she's out what money? I don't understand where she's entitled to, what money is she entitled to that they would be taking? Well, she's entitled to other damages in the case. There's other damages in the case. Okay. Well, she gets her damages, but they take what's theirs. Out of a settlement, they're not required, they're not limited to the amounts that were dedicated to them. They don't actually get the settlement. They would have to sue her to get the settlement you got from the insurance company. Well, we'll have to, Ms. Duncan will be liable, yes. Your theory of standing then is more this regulatory theory that we had to pursue this? Well, we had to pursue it and... You had to have filed a claim. You're in trouble if you didn't file a claim, but do you have authority that says not only do you have to file a claim, but you also had to file this declaratory judgment action. Are there cases that say that? We also had to file a declaratory judgment action. I'm not aware of a case that says we had to do that, but I'm not aware of a case that says that would be required for standing either. But you're saying then that the Medicare statute requires you not just to file a claim, but to pursue a claim through all available means? Is that what you're saying? Regulations require that. A regulation says that. And what regulation? It's cited in the briefs. I can get the specific number for you, but it's cited, I think it's in the first paragraph of the requirements. But we've confirmed the penalty for not following the regulation is things will play out, your client will be liable to them in some recovery that she has in another fashion. Ms. Duncan may have to pay out the money owed to Medicare out of her own funds, out of funds that have nothing to do with Medicare. So what funds is she entitled to that it would come from? I'm just trying to see how she'd be harmed. She's getting funds. The funds she's recovering. Other benefits include, for example, work loss, other things like that, other medical bills that weren't paid by Medicare. That's covered by the insurance contract, is that right? Right. That's all part of your briefing contract. So let's just say we take out the Medicare stuff, we go get a judgment for all that other stuff, Medicare now has a right for reimbursement from her. That seems fair. Why? I'm sorry, but it doesn't seem fair that she would be paying out of her pocket and Liberty Mutual would be off the hook. Where'd she get what's in her pocket? From other expenses other than the ones that were conditionally paid by Medicare, right? Medicare has the right under the Medicare Secondary Appears Act, Medicare has the right to seek recovery from the primary insurance company, doesn't it? Sure, through direct action. Right. And the provider has the right to make a claim against the primary carrier. Sure. And now you're saying that you have the right to make that claim because of this regulatory duty theory, right? Yes. So do all three then get some doubling up damages of something? If we didn't pursue this and pursue the claim and prove the liability, Medicare would be getting nothing. Well, let's go to that for just a second because one of the things that I think is fascinating about the odd facts of this case is Medicare at least initially said they weren't seeking anything. They didn't seek recovery from the primary insurance company. So it seems hard to me to hold the primary insurance company responsible for not having paid primarily when Medicare paid and said they didn't have a claim against the primary carrier. So what significance, if any, does that fact have? What happened is basically a Liberty Mutual person told Medicare, we're not liable, there's no causation. And Medicare said, OK, it's zero. And then one of the lawyers underneath for plaintiffs informed Medicare, oops, that's not true. And Medicare corrected itself. Medicare corrected itself, I thought, after Liberty went back to them and said they'd lost the state court claim and now they're primary and they do owe. Is that right? Right. They actually reversed themselves or held off after being informed that there was a case like this. So did you say that Liberty is filing, has filed an appeal of the state court judgment? No, they went to, there was a, so actually since the briefing in this, there was another, they filed another case in federal court trying to force Medicare to do a direct action and they went to state court trying to stay that while the request for a direct action is pending. And that stay was denied and at that hearing they informed the judge that they would be appealing those rules. Isn't there a time frame that they have to appeal? That case, so that's a partial summary judgment, partial judgment that occurred there that was as to causation. They still have to get to the amount of damages. So in other words, the state court action that you're promising this on to say that Liberty Mutual was liable is not a final judgment? We contend Liberty Mutual's responsible, right, it's not a final judgment. I know you contend that, but just follow with me for just a second here. If Liberty Mutual isn't liable, then they weren't primary and you don't have a claim under the Secondary Payers Act, right? If they weren't liable? They have the right. If they weren't liable, you don't have a Secondary Payers Act claim. Is that right or is that wrong? That's correct. Okay. Now, what you're promising this whole lawsuit here, it seems to me, is this state court judgment on the breach of contract claim under which the state court said that Liberty Mutual was liable, so therefore they'd be primary. Am I right so far? Yes. But what I didn't understand is now, apparently, that's not even a final judgment. That's correct. So how do you pursue and win this Secondary Payers Act claim until somebody, this court, the district court, the state court, the state court of appeals, I don't know, somebody makes what then becomes a final judgment on whether there was or wasn't coverage under this policy? Well, I think you're right. We have to continue that fight. Ms. Duncan has to continue that fight, which is why she should be entitled to double damages down the road. We're not saying that a double damage amount could be brought to judgment today. I'm just trying to figure out- We're saying, we agree that they- I'm trying to figure out why we're hearing this appeal at this time when the underlying premise of the whole claim, seems to me, has yet to be definitively decided by any court. Well, the reason is because we had a timeline to appeal. So this case was brought out to district court. How did it get in the district court? It was removed on the basis of the Medicare Secondary Payer Act claim. And what was removed? The whole- The entire case. The whole case? The whole case was removed. But then, after deciding to dismiss this claim, the rest of the case was remanded to state court. Ah, okay. That's why- Oh, it's properly back in the state court. As far as I know, yes. So would it have made sense, I have no idea whether this is right, but would it have made sense for the district judge to have deferred then action on the Secondary Payers Act claim? I know he dismissed your claim, but should he have actually waited to see what happened to the state court claim? Yes. So would you be satisfied here, and now I'm really stretching things, would you be satisfied here if this went back to the district court with instructions to stay the action on the Secondary Payers Act claim until the dispute under the breach of contract claim is finally resolved? Yes, with the understanding that we're entitled to plead it and pursue it, yes. Again, I'm not asking for the judge, I think it needs to go back to the district court. I don't think the district court could make a determination of damages without the state court action, if that's what you're asking. Well, I wasn't really asking that, but normally we wouldn't be hearing this liability aspect of it before the damage decision was reached. You do it all at once, and it seems to me they can't do that until you get the state court action done. That's correct, I think. In case this wasn't already complicated enough. Thank you. Well, your red light's been on, so thank you. Good morning, your honors. May it please the court, this is my first time up here in this circuit, and I really appreciate the honor of being here. Richard Jopik from the Kitsch Law Firm out of Detroit, Michigan on behalf of the Appellee Liberty Mutual. Listening to the questioning from the court, it seems that the court has a very good handle on the actual facts, even though they're very complex in this situation. But to pare it down, what we contend is the real central issue is Liberty Mutual, a no fault insurer, receives a claim in from Mr. Duncan at that point in time. He had not yet expired. Immediately notifies Medicare under Section 111 of the MSP Act, a requirement of insurers now to report claims that come in dealing with a Medicare beneficiary. Right up front, I think it was within three days, it's part of the record, of receiving that claim, Medicare is alerted to the fact that a Medicare beneficiary is seeking to insure Liberty Mutual. In that setting, CMS, under the regulations, I believe it's 411.24, can pursue Liberty Mutual directly to try and recover their reimbursement, if there is any. And Medicare, through their procedures, followed their procedures to pursue an insurer and see if they are a primary payer and if reimbursement is owed, and comes up with what's called the conditional payment letter. And that's been referenced in the pleadings before the court. I think even Judge Friedman, up in the district court, had addressed conditional payment letters. Liberty Mutual gets the conditional payment letters. Under the regulations through the MSP statute, Liberty Mutual has the opportunity to challenge the amounts that are listed by Medicare that Medicare believes are related to that accident. Liberty Mutual takes advantage of those regulations. I don't mean that in a negative connotation anyway. You could challenge those conditional payments, even though you were taking the position at that time that you did not cover this accident. Exactly. And we, in the state court, Mr. Duncan's claim and now the estate's claim, we said coverage is not available here. But you couldn't challenge the fact that he was getting nursing care or he was getting oxygen treatments or whatever we want to make up. The basis, we challenged not only the state claims from Mr. Duncan, but also Medicare under the proper regulations. Because we had information and on the investigation, after a while it appeared there was no causation, as Judge McKee, you pointed out. To us, the information and evidence we had as Liberty Mutual was that the heart attack occurred and caused the accident, in which case there is no contract of insurance. So you could challenge the coverage, yea or nay, he's covered by the Liberty Mutual policy, but could you insert yourself into the kind of care that he was getting from the providers that Medicare was paying for? I don't believe so. Okay, and in fact... We can't have an explanation of what Medicare can or cannot pay. And we cannot say that we're not going to pay because Medicare will pay. And I think that was addressed, Judge Cook, I know you concurred in that decision, biomedical. There were statements from at least two of the people who were connected with Liberty advising that the care that should be given to Duncan should be consistent with a lower threshold of Medicare reimbursable care than a higher threshold that somebody who was Bill Gates would be getting. To be honest, Your Honor, I did not go back and look at those statements by those two claims representatives who handled it early on, but my understanding, even at that point, Liberty Mutual was disputing... Yes, you're saying all along, we don't know anything, but by the way... Can they actually direct what is or is not provided as medical care to a doctor and say, you can't do this, or a hospital, you can't do this? They might be able to say, we're disputing, you know, whatever Medicare is going to cover. They're never going to say, you can't do it. They're going to say, if you do it, we're not going to pay. Right. We don't believe there's causation. We're not responsible for your bill. If you've got Medicare involved... But cutting to the chase, why was not the decision of the district court and one that we might give essentially an advisory opinion here when we don't yet know whether Liberty provided coverage here because that proceeding is not done? Liberty Mutual is now in an interesting position because, as the court knows, in dealing directly with Medicare, Medicare made its federal decision that on the evidence that they had and what they looked into, the amount of conditional payments was zero. That was the law of our case below, even before the secondary payer claim was made for double damages. That claim came in after the jury trial on a causation. Was any of the injury related to the automobile accident? The jury said yes. That was the only issue in that trial. And then you removed the case to federal court. We reported immediately to Medicare that the jury verdict decision on the merits was different than what Medicare had determined when saying zero. And at that point, we said, are you going to change your position on this case? Do we need to deal with you again in your direct recovery claim? After that, as one plaintiff amended their complaint to say, hey, we're now owed double damages because the jury made that determination. Liberty Mutual already stepped up and told Medicare, hey, this determination had been made. But I'm trying to get to how does this case get to federal court? And how does part of it end up back in state court while this appeal is pending? Because I used to teach civil procedures, so I'm fascinated by these questions.  So you removed to federal court. We did remove. And the district judge then says he doesn't think it's right for you to have to be subject to double damages. And then, am I correct? I'm just filling in gaps here. Am I correct then that the district judge then sent the state claims back to the state court? Is that what happened? Correct. The district judge dismissed the MSP claims, sent the state no-fault claims back. The state no-fault claims damages deal with, they're claiming loss of employment, survivor benefits. You know, there's other state law damages in no-fault, and that's why plaintiff brought the original claim. But he could only send those back then because he had decided the federal claim was not viable. There is no more federal question. So that was the jurisdiction he had under the Secondary Payer Act. And he said once that was resolved, he remanded the state court. Well, his theory, I assume, was I'm deciding Liberty doesn't have any responsibility under the Secondary Payers Act here, even if they were primary, according to the state court. So, I mean, that makes some sort of logical sense. But in reality, so he doesn't care because of that outcome whether or not Liberty is primary or not. Judge Friedman was very specific with me when I was there. But it seems to me we have to care whether ultimately Liberty is primary or not. Because if Liberty turns out not to be primary, then even your fellow counsel concedes there's not a legitimate Secondary Payers Act claim. Correct. So why wouldn't anything we did then in this instance be basically an advisory opinion that says, well, if this happens, this is a result. And if this happens, this is a result. That's not normally what we do. Under the scenario that we're presently in, Liberty Mutual has dealt directly with Medicare. I've told Judge Friedman, based upon Liberty Mutual's statement, that we are accepting the responsibility to reimburse Medicare. Have you reimbursed Medicare? As a matter of fact, we just finally, because of that injunctive complaint we filed in Detroit, we did get a final demand letter last week from Medicare, and payment was submitted last week. But you're appealing, you're going to appeal the state court judgment, no? There are going to be appeals regarding the relationship of other damages that are permitted under no fault, survivors, wage loss. Are you appealing the question of whether this accident was covered under the policy? The causation, no. My understanding is there's no argument, we have no challenge to the trial and the verdict. Well, then all this discussion I've been having is irrelevant. That's final, then, as far as you're concerned. The causation verdict, yes. But how do, no offense to you, but how can we rely on that until that state court case is finished? We had the, yeah, I understand your position. Yeah, I'm not trying to offend you in any way, but normally parties change their views as to what they're going to do because of various events. So should we stay this appeal until there is a final judgment in the state court that has not been appealed? The federal issue deals with double damages. There is no double damage claim remaining in state court at this point. But suppose you hypothetically appealed the causation issue, among others, to the state court of appeals, and they said, hey, Liberty Mutual's view of the policy is the correct one. They should never have been held liable by the jury in the trial court in the state court. So hypothetically, you could win, and then this whole case would disappear. It was a very good trial, very clean trial. Hypothetically, I suppose that is an outlier. Has the time to appeal run? No, because there is no final dollar judgment in state court for any of the no-fault damages. And that's why we're here dealing with is there a double damage claim, which is a federal question. And if there's not, as Judge Friedman recognized, we've dealt with Medicare directly, and Medicare pursued their direct recovery from us. But did you concede before Judge Friedman that you were liable causation-wise, and therefore you were primary, regardless of what happens further in state court? Yes, we do have the obligation to reimburse Medicare. Yes, that's in the transcript, too, as well. We agree. We're going to pay them. The only holdup was is this double damage claim going to exist? Because in the regulations, 411.24, it specifically states that even if we pay the plaintiff on a judgment, we still have to pay Medicare. And if Medicare is pursuing that direct right of recovery action against us, Liberty Mutual, we have to pay Medicare like the filed demand that came in last week. We are now obligated to pay that because we agree with it. Well, the provider presumably could also sue you for the difference between the Medicare rate and the charged rate on the underlying claim, the 200 versus 600. Yeah, there are some issues in Michigan that make that inapplicable in this case, that a provider cannot do that in this case. Because they accepted the Medicare rate? They accepted the Medicare, and on top of that, there were some changes in our lien laws and assignment laws in Michigan, and no fault, that now would preclude their claim. Switching gears for a second. Yes. Your fellow counsel says he filed that state court claim, even though Medicare had paid the provider, because he was obligated to do so under Medicare regulations. What is your position on that? The regulation that was referenced is 411.51, and they don't quite cite the regulation accurately. The regulation requires them to take the steps necessary basically to protect the claim. They reported the claim to Liberty Mutual. Liberty Mutual opened up the case file on it and started addressing it. Medicare cannot make a payment on behalf of a no-fault beneficiary until they have taken the steps. If they did not take that step and report the claim and make their claim against no fault initially, then Medicare will not pay the benefits. But is what they have to do, does the regulation only require them to file a valid claim, or do they then also have to take all other action, including suing in state court, which is essentially what Mr. June is saying? There is nothing in any regulation or the statute that says that they have to file a legal action against the carrier in order to comply with their obligation to report that claim and initiate it. Are there any cases? I haven't found any, Your Honor. All they have to do then under your theory, which you say is supported by the regs and statute and cases, is to report the claim to the insurance company. Correct. And then do they have to report it to Medicare? Plaintiff does not. They can voluntarily report it. I've always recommended that plaintiff attorneys report if they get a claim in dealing with a Medicare beneficiary. They do not. It's not a mandatory thing for them to report to Medicare. It's not in the regs. It's not in the regs. The regs and statute does say that the insurer has to report. But there were other reasons to file this state court action, in addition to getting payment to pay off the provider that was essentially fronted by Medicare. There are other claims under the policy that you had been disputing, in addition to paying for care, right? I don't know, lost wages, whatever they might have been. So there was a basis to go to court for that. Yes, separate and distinct from Medicare. They had to pursue their claim under no fault because coverage was denied. I see my time has expired, Your Honors. Finish your sentence. Because they had to pursue Medicaid because what? You said because? Because there was a dispute of coverage. There was no contract of insurance as Liberty Mutual's position based upon that causation. They had to file their suit in state court to address that issue. Separate and distinct of Medicare. Medicare didn't come up until after the jury had reached it. What is your position as to whether the Duncan estate has been damaged by the fact of conditional payment by Medicare, as opposed to whether they've been damaged by your wrongful refusal to pay whatever it is under the policy? Is there any damages that you know of that they've suffered because Medicare paid first? I have not seen any. I haven't heard any alleged, and I can't find any cases that give that type of damage where Medicare is taking care of it, and particularly where an insurer is dealing with Medicare rather than leaving it to the plaintiff. All right. Thank you. Thank you, Your Honors. Could you clarify just for one moment, what are the additional damages that are possible under this no fault policy? That's what was addressed in a summary disposition at the state court three weeks ago. There were claims for survivor benefits, and I'm not going to argue why they're not applicable. I'm just asking what survivor benefits. There were some attendant care benefits, I think. I don't deal with no fault. I deal with Medicare. Someone else argued the other side of it. Wage loss was an issue, and there were two others that the state court said, no, you're not going to get them. And there's interest and penalties and things like that? Interest, yes. No fault statute has interest penalties in it, and they were pursuing those. Okay. Pain and suffering? Is that in there? Or don't you get pain and suffering? No. I have my wonderful no fault attorneys at the back of the courtroom. Thank you. Thank you, judges. Well, a lot of that is news to me, but one of the points that was made, I think, is What was news? That there's been a final demand letter. I'm not aware of a final demand letter. That there's been a payment. I'm not aware of a payment. They go together. Yes. I mean, one precipitates the other. Is that right? Correct. In my experience, you don't get a final demand letter from Medicare until there's a judgment or settlement in the case, and they will send recovery letters along the way that say, Here's some money that you owe us. Please send us this amount of money. That's not a final demand letter. Did you check to see if any of these things had happened before you came here? Pardon? Did you check to see if these things had occurred before you came here? I'm not aware of I know you're not aware. I don't understand the Liberty Mutual saying they got a final demand letter. I'm not aware of getting the final demand letter. So the demand letter comes from Medicare to an insurance company? Or does it come to the family? It should come to both. It should come to both, and you haven't received it. I have not. And of course, we're talking about extra record things. It's possible that the state court counsels received that. I'm sorry. We're talking about things that are not technically in the record, but are informative. And obviously, you're both officers of the court in terms of representing what's going on. So suppose hypothetically that Liberty has paid Medicare, the full amount that Medicare has already paid on your client's behalf. What remains now? Is there an injury that you suffer? I believe we're still entitled to the double damages. And why? Because we're the ones who have brought Liberty Mutual to the point of making that payment. And we did all the work. There is no direct action by Medicare, by the government in this case. They have the right to make a direct action. There isn't one. Well, isn't this demand letter the equivalent of a direct demand? No. No, the direct action, they would file a lawsuit. That's a direct action. So you're saying that Medicare sends this final claim, or what do you call their request to the primary insurance carrier for coverage? What do you call that? They request a settlement. There's a process after a settlement or a judgment that they go through to calculate their final demand. And they won't give you that until the settlement. So final demand is what you're referring to. So let's assume for a second that Medicare has now made a final demand and that they paid. Okay. So how did you, having sued them over the coverage, precipitate that? If we didn't sue them, Medicare wouldn't be getting paid. How do we know that? Because Medicare said they would accept zero at one point in time, and we had to correct them. Okay. So assuming then that they sent the demand and Liberty still persisted in refusing to pay, then are you saying that Medicare can't sue Liberty to collect what they've conditionally paid? Medicare could sue, certainly could sue. But the whole point of the private right of action is to alleviate Medicare from that responsibility so that we're not using their resources to do that. The problem there, potential problem, and I don't know the answer to this, is that if this was a key TAM case, then I think your theory would be right because you don't have to show when you're enforcing one of the government interests that you were damaged. But the case law is clear that this is not key TAM. So it just seems like there has to be standing. Well, I shouldn't say that. There always has to be standing, and it seems like in order for there to be standing, you have to have been damaged. And that's where I went back earlier to say, what are your damages? Not from the breach of contract, but rather from the fact that Medicare advanced the money on behalf of the primary insurance company. And I think once again the problem is they've said to the state court, there are $671,000 of bills. Because Medicare paid $225,000 in conditional payments, we don't owe anything. And they haven't said we agree that we need to reimburse Medicare. They just said because Medicare made conditional payments. So you're not addressing, I think, how your client is damaged. An example would be Medicare only paid $200,000, the coverage is $600,000, the hospital is still looking to us for the difference. Is anybody making claims against the state here that would allow us to see where these damages are? Well, the damages aren't, there aren't claims against the state that I'm aware of. But, for example, in the state court right now there's a dispute about McLaren, which is one of the health systems, and their bills, and who has the right to go forward with that. Council mentioned the state court case covenant. That all goes back to the breach of contract claim. Those claims are not based upon the fact that Medicare advanced payments. But you were distinguishing provider claims a little while ago. And under Michigan law right now, we have to go forward with the provider claims. What do you mean you have to go forward with them? Under covenant versus state farm, the providers do not have a direct right of action against Liberty Mutual. That's the new case. We have to go forward. The concern that we have is you're standing to raise the claim of the double damages under Medicare. If you haven't been damaged. They're using the Medicare statute to try to walk away from liability that we're pursuing. I think that that's pretty clear. You started to say liability that we have to cover. But that's not the end of your sentence. That you have to pursue. They have to walk away from liability that we... So we're suing for what's called allowable expenses. By the way, we think we have to make the providers whole. If we get allowable expenses in the state court, we think we have to make the providers whole to the extent that exceeds the amount that Medicare paid. But allowable expenses are allowable under your contract? No, the statute, Michigan, it's MCL 500.3107 to be specific. Say it again. MCL 500.3107 defines what allowable expenses are in this context for no fault claims. For purposes of what? For no fault claims. Okay, so that's not a Medicare matter. That's a breach of contract claim. Correct. But they're using Medicare. They're saying we don't have to pay any of those bills because Medicare conditionally paid them. I didn't understand that at all. I thought all that they were saying is we're not going to pay the provider bill because Medicare already settled on that and the provider accepted it. And then you're all saying once the provider accepts that Medicare payment, they can't come back against anybody for the balance. We heard that earlier. Is that right? We can't ask them to pay Medicare? Excuse me. Okay, I'm sorry. You keep talking over us. I'm sorry. Is it true that once having accepted the Medicare payment, the provider can't sue the estate or the insurance company or anybody else? It depends on the context. But I believe that in this case, I believe that under Michigan law, if they've accepted an amount, that they can't ask for more than that amount. Okay, so you can't be vindicating Medicare's interest to get reimbursed for these other payments because Medicare wasn't obligated to pay those. Those are just things under the contract. We're only talking about the provider payment. So the harm, getting back to the question, what's the harm that gives you standing to bring this federal claim? Ms. Duncan remains liable to Medicare whether or not she recovers the Medicare equivalent from Liberty Mutual. What does she owe Medicare if Liberty does, in fact, reimburse everything that Medicare is claiming? I don't know the answer to that question right now, but we don't ever know the answer to that question until Medicare goes through the whole settlement resolution process. But they will. They do get a process, and there is a way that they get what they agree to, that Liberty Mutual owes them. They go through a process with Ms. Duncan as to what Ms. Duncan owes Medicare. It just seems like you're saying that, well, Duncan's estate might have damages if Liberty hasn't reimbursed Medicare everything that Medicare is claiming. And that may be true in the future, but as of today, what's the claim? I still don't understand how we could create this in a situation where the insurer can use Medicare to reduce its contractual claims. I know you don't like the questions, but there are reasons why legally we're asking you the questions, and either you have an answer, whether you like it or not. Either you have an answer that, yes, these are the damages that are concrete and particularized, and they're not speculative, or you don't. And earlier in our inquiries, I asked, do you have a claim that Mr. Duncan received lesser care because he was being covered by Medicare than he would have been if he was being covered under the Liberty insurance policy? And I don't know the answer to that question as I stand here today. But assuming that you did have that claim, you haven't pled it. You would agree with that, wouldn't you? I haven't pled it here. Yes. I haven't argued it in these briefs. You didn't plead it in the district court before Judge Friedman, so it's not before us up here. Is that a fair statement? I believe that's true. I'm not positive about what's in the pleadings in the district court. I don't want to say that I'm positive about that. Well, thank you both for your argument. We've taken you beyond your time frame, but it's a complicated situation, and so we appreciate your efforts on both sides. And speaking for myself, if there is a point in staying this federal appeal, and the two of you wanted to file letter briefs on that issue since that was not in the briefing, as I recall, we would accept letter briefs on the question of staying the federal appeal that would be no more than 10 pages and that would be filed within 10 days. Ten and ten. Is the court indicating that what we are saying or you don't know? No. I am asking you as the presiding judge that if you would like to file letter briefs on the topic of whether the federal appeal should be stayed because of the discussion that we've had, we would accept letter briefs from each of you within 10 days, no more than 10 pages on that topic. If you don't think there's any point in staying it, don't do it. Or you could say no stay or yes stay or this is a crazy idea. I would say if we don't hear from you, we will assume that neither of you think that we should stay. Make sense? Yes. Thank you both. Thank you. Would the clerk adjourn court, please?